UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
AGRON ISUFI,

                      Plaintiff,                          **COMPLAINT**

      -against-

                                                                 **JURY TRIAL DEMANDED**

622 THIRD AVENUE COMPANY, LLC; COHEN
BROTHERS REALTY CORPORATION; and
LAWRENCE ANGELO, INDIVIDUALLY,

                      Defendants.
------------------------------------------------------------------------X

Plaintiff AGRON ISUFI ("Plaintiff" or "Mr. Isufi"), by and through his attorneys, Joseph & Norinsberg, L.L.C., brings this Complaint against Defendants 622 THIRD AVENUE COMPANY, LLC; COHEN BROTHERS REALTY CORPORATION, AND LAWRENCE ANGELO, (collectively "Defendants"), and states and alleges as follows:

## NATURE OF CLAIM

1.     Plaintiff brings this action for Defendants' violations of Plaintiff's rights guaranteed by: (i) the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; (ii) the New York State Human Rights Law, Executive Law § 290 et. seq.; (iii) the New York City Human Rights Law, § 8-101 et. seq. of the New York City Administrative Code; (iv) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (v) the overtime provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 160; and (vi) the requirement that employees furnish employees with an accurate wage notice at the time of hiring, and on an annual basis, containing specific categories of information under the NYLL § 195, which is the New York Wage Theft Prevention Act (the "WTPA").

2.     Plaintiff seeks equitable relief and monetary damages as redress for Defendants'

1

blatant violations of Plaintiff's rights under the above referenced federal, state and municipal laws protecting the rights of employees in the workplace.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331, as this action involves a question of federal law arising under 29 U.S.C. § 207(a).

4. This Court has supplemental jurisdiction over all state and municipal law claims stated herein pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(ii), as all acts comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(i), as one or more of the Defendants reside within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On or about July 6, 2017, Plaintiff filed a complaint against Defendants with the Equal Opportunity Employment Commission ("EEOC"), EEOC Charge No, 520-2017-02745, alleging discrimination based on age and national origin, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").

7. On December 7, 2017, the EEOC issued Plaintiff a Notice of Right to Sue, based on the allegations against Defendants. This Complaint is being filed within 90 days of said date.

8. All other administrative prerequisites have been met.

**JURY DEMAND**

9. Plaintiff respectfully demands a trial by jury on each count of this complaint pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

10. At all relevant times herein, Plaintiff Agron Isufi ("Mr. Isufi") was and is a resident of the City and State of New York, maintaining an address at 199 Gleeson Avenue, Bsmt. Apt., Brooklyn, New York.

11. Mr. Isufi is an "individual" and an "employee" entitled to protection as defined by the FLSA, NYLL, and the NYCHRL.

12. Mr. Isufi was employed as a porter for the Defendants from 2005 through December 1, 2015, when his employment was unlawfully terminated.

13. At all relevant times herein, Defendant 622 Third Avenue Company, LLC was and is a limited liability company with a principal place of business located at 750 Lexington Avenue, in the County, City and State of New York.

14. At all relevant times herein, Defendant Cohen Brothers Realty Corporation was and is a limited liability company with a principal place of business located at 750 Lexington Avenue, in the County, City and State of New York.

15. At all relevant times herein, Defendant Lawrence Angelo ("Angelo") was and is an individual and an employee of Defendants, where he functioned as Plaintiff's direct supervisor and manager, as of 2015.

16. Upon information and belief, at all relevant times herein Defendant Angelo was and is a resident of the State of New York.

17. At all relevant times herein, the corporate Defendants were "employers" and "persons" within the meaning of the FLSA and NYLL. Additionally, the corporate Defendants' qualifying annual business exceeds $500,000.00 and the Defendants are engaged in interstate commerce within the meaning of the FLSA, the combination of which subjects Defendants to the FLSA's overtime requirements.

18. At all times relevant herein, Defendants were responsible for and did set Plaintiff's rate of pay, work schedule, job duties and all other terms and conditions of employment.

## STATEMENT OF FACTS

*Defendant's Discriminatory Treatment of Plaintiff*

19. Plaintiff began working as a porter for Defendants on or about 2005. He worked the night shift, and performed heavy cleaning work for Defendants, including vacuuming and shampooing functions.

20. Plaintiff was a devoted employee, and he worked without any disciplinary incidents over the course of a decade.

21. On or about 2015, there was a change in Plaintiff's employment. At the time he was 61 years old. Plaintiff was assigned to a new shift, from 8:00 a.m. to 5:00 p.m., where his supervisor would be Angelo. In this new position, Plaintiff's primary responsibility was to stack and maintain the cleanliness of 35 men's bathrooms.

22. From the start, Angelo was hostile to Plaintiff and ridiculed him for his age and declining health.

23. On a daily basis, Angelo yelled at, intimidated, threatened, and belittled Plaintiff, saying things like, "bullshit old Albanian man," "toilet man," or "lazy old man."

24. The situation worsened considerably after Plaintiff had kidney surgery on August 3, 2015. Prior to the surgery, Plaintiff was in considerable pain and had to use his sick days to take time off when needed.

25. Then after the surgery, from August 6, 2015 through Monday, August 18, 2015, Plaintiff was compelled to take a few days off work, to recover from the surgery. He supplied the Defendants with a doctor's note, wherein the doctor recommended the medical leave for this time period.

26. On August 19, 2015, which was Plaintiff's *first day back* after his medical leave, Angelo issued a written warning to Plaintiff, based on alleged performance issues.

27. Thereafter, Angelo's harassment escalated. Angelo constantly rebuked Plaintiff regarding minor and exaggerated performance or disciplinary issues. Angelo gave him two warnings but did not offer any training or counseling to help cure the alleged performance issues. It was clear that Angelo wanted to get rid of Plaintiff because of his age and the fact that he was still recovering from the surgery.

28. Notably, on October 26, 2015, Angelo rebuked Plaintiff for failing to do his job properly on account of his sickness. When Plaintiff asked him to specify what he had done wrong, Mr. Angelo ignored the question completely and said curtly, "toilet man, go clean the bathrooms."

29. There were two workers who handled the shift before Plaintiff, Louis and Zikki, who were treated differently than Plaintiff. If their work was inadequate, which it frequently was, the company covered for them. In contrast, when it came to Plaintiff's work, Angelo would *look for* inadequacies so that he could humiliate and discipline Plaintiff.

30. At all relevant times, Plaintiff was subjected to a hostile work environment and discriminatory behavior by Defendants based on his age and illness.

31. The corporate defendants created and/or condoned a hostile work environment which resulted in the harassment of Plaintiff and which resulted in the discriminatory treatment of Plaintiff.

32. On October 27, 2015, Plaintiff was suspended for three days on trumped up "performance issues."

33. Subsequently, on December 1, 2015, Plaintiff was improperly discharged due to alleged "performance issues."

*Arbitrators Found that There Had Been No Just Cause to Discharge Plaintiff*

34. Plaintiff's union, Local 32BJ, Services Employees International Union (the "union"), filed several grievances against the within Defendants on Plaintiff's behalf, alleging discrimination and unlawful termination, among other claims.

35. In April 6, 2017, Plaintiff's grievance was presented to an arbitration panel. A hearing was held, and evidence was submitted. Subsequently, the arbitration panel issued an Opinion & Order in which it held that Plaintiff's discharge had not been for just cause. Additionally, the panel held that the proper remedy was for Plaintiff's employment to be reinstated.

36. The opinion highlighted the fact the Plaintiff had worked for 10 years without any formal discipline, prior to working with Angelo. Furthermore, the opinion held that the Defendants had not met their burden in proving that Plaintiff had committed the alleged infractions and that the termination was the appropriate level of discipline for those infractions.

37. Plaintiff was delighted when he read the opinion and he looked forward to returning to work.

*Defendants Retaliate Against Plaintiff for Engaging in Protected Activity*
*and Constructively Discharge Plaintiff*

38. Subsequently, Plaintiff received correspondence from the Union directing him to report to supervisor Mr. Wilson Nunez at 8:00 p.m. on June 12, 2017 for the night shift from 8:00 p.m. to 3:30 a.m. (See Exhibit A attached hereto). This meant that Plaintiff would no longer no longer have to work for Angelo, and instead would have a new supervisor. Plaintiff could not have been happier. He imagined he could turn back to clock to the way things were before Angelo became his supervisor in early 2015. He would again be an ideal employee. He would again work without being humiliated each and every day, without being ridiculed for his age and illness; and without being constantly rebuked and given warnings for phantom infractions.

39. However, when Plaintiff reported to work at 8:00 p.m. on June 12, 2017, Mr. Wilson Nunez told him that there had been a change and he should report to Angelo the next morning at 8:00 a.m. to resume his former day-time shift with Angelo. Plaintiff was deeply disappointed. He felt ill just thinking about returning to work for Angelo. He knew Angelo would continue with his daily hostilities. Angelo would again humiliate him, and make him feel old, weak, and entirely inadequate.

40. Nonetheless, Plaintiff reported to work at 8:00 a.m. the next morning, where he encountered Angelo. Plaintiff asked Angelo why he couldn't keep the shift that the Union had assigned him, the night shift with Mr. Nunez, and Angelo replied: "That position is not available anymore, you will be working with me whether you like it or not. You can complain wherever you want." Angelo's bullying had already begun.

41. Plaintiff asked his Union to intervene and permit him to keep the night shift where Angelo would not have to be his supervisor, but the Union were unable to assist him. Angelo

insisted on remaining his supervisor, even though the arbitration panel had effectively stated that Angelo's prior treatment of Plaintiff had been improper and unlawful.

42. Plaintiff understood that this was Defendants' indirect way of circumventing the arbitration panel's Order to have him reinstated. Defendants couldn't directly oppose the Order and not reinstate Plaintiff. Instead, they assigned him to Angelo, which was effectively a constructive discharge.

43. Plaintiff made repeated requests for a new assignment, but his requests were ignored or rejected. Thus, Plaintiff was stuck in a catch-22: He could only return to work if he continued to work for Angelo. However, Plaintiff refused to return to a hostile employer-employee relationship that was plainly unlawful, as indicated by the Order of the arbitration panel, reversing Angelo's decision to terminate him.

44. Defendants constructively discharged Plaintiff in retaliation for his complaints and grievances about the age discrimination he was experiencing and the unlawful termination of December 2015.

45. The constructive discharge was yet another unlawful act demonstrating Defendants' ongoing and continuous pattern of age discrimination.

*Wage Violations Committed Against Plaintiff*

46. In addition to the misconduct detailed above, Defendants failed to pay Plaintiff lawful wages.

47. Notably, Plaintiff routinely worked between 45-55 hours per week and he was not compensated for his overtime hours at the statutory rate of one-and-one-half times the regular rate, in violation of the FLSA and the NYLL.

48. The Defendants improperly tried to "credit" Plaintiff's overtime hours to the following week, so that they would not have to pay him overtime wages at the statutory rate. Meaning, if Plaintiff was required to work 48 hours one week, he would still get paid for only 40 hours that week. However, Defendants would then ask him to take a day off the following week, bringing his total hours the second week to 32 hours, and then pay him 40 the following week. This conduct is plainly unlawful, as overtime pay is required for all hours worked over forty in a single week.

49. Furthermore, on busy days, Plaintiff was required to work through his lunch hour and was not paid for that additional hour.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Discrimination and Hostile Work Environment in Violation of ADEA)*

50. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

51. As of 2015, Plaintiff was 61 years old,

52. Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult due to his age and illness. He was called "old man," "toilet man", and rebuked and disciplined the day after he returned from medical leave. Thereafter, he was repeatedly rebuked and disciplined on baseless grounds.

53. Plaintiff's found his work environment to be hostile and abusive.

54. Defendants' pattern and practice of age discrimination toward Plaintiff was ongoing and continuous. Even after the arbitration panel directed that Plaintiff be reinstated, Defendants engaged in discriminatory behavior, and changed Plaintiff's shift so that he would be assigned to his old supervisor Angelo, thus orchestrating his termination.

55. By their actions, the Defendants and their agents discriminated against Plaintiff with respect to harassment, hostile environment, wages, promotion, termination and other terms and conditions of employment, because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq*.

56. As a proximate result of Defendants' age discrimination, Plaintiff has suffered, and continues to suffer, substantial losses, including the loss of past and future earnings, increases, promotions, bonuses, and other employment benefits.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*(Age and National Origin Discrimination under*
*New York Executive Law § 296 and New York City Human Rights Law § 8-107)*

57. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

58. At all relevant times, Defendants were responsible for complying with New York State and City Human Rights Laws.

59. At all relevant times, Defendants had the power to hire, promote and discharge Plaintiff.

60. Defendants' actions, including age and origin discrimination, were in violation of the New York State and City Human Rights Laws.

61. At all relevant times, Defendants knew of the discriminatory conduct as alleged herein, engaged, and/or acquiesced in such conduct, and/or failed to take immediate and appropriate corrective action.

62. Plaintiff, by reason of the foregoing, has suffered and continues to suffer severe emotional distress.

63. As a proximate result of Defendants' age and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial losses, including the loss of past and future earnings, increases, promotions, bonuses, and other employment benefits.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Violation of the NYC Administrative Code §§ 8-107(1)(a) and (15)(a))*

64. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65. Plaintiff is an individual with a disability within the meaning of New York City Administrative Code § 8-107 (the "New York City Human Rights Law").

66. Plaintiff is a qualified individual with a disability within the meaning of the New York City Human Rights Law.

67. The New York City Human Rights Law prohibits discrimination against Plaintiff because of his disability in regard to Plaintiff's compensation and privileges of employment.

68. Notwithstanding Plaintiff's physical disability, with reasonable accommodations, Plaintiff was able and willing to perform the essential functions of his job.

69. Defendants discriminated against Plaintiff by refusing to accommodate his disability and instead giving him warnings and suspensions, right after he returned from medical leave due to surgery, and baselessly terminating him thereafter.

70. Defendants had no legitimate business reason for the excessive discipline and ultimate termination of Plaintiff's employment.

71. Defendants' actions constitute unlawful discrimination on the basis of disability in violation of the New York City Human Rights Law.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Retaliation in Violation of the ADEA)*

72. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

73. Plaintiff engaged in protected activity when he took a short leave of absence due to an emergency medical condition. In retaliation, the day after he returned to work, Angelo rebuked him and gave him a baseless warning. Thereafter, Angelo continued to unnecessarily discipline Plaintiff.

74. Additionally, Plaintiff engaged in a protected activity when he filed a grievance with his Union after his baseless termination on December 1, 2015 and presented his case to an arbitration panel.

75. Thereafter, despite the fact that the panel found that Plaintiff's termination had been improper and unlawful, and ordered that Plaintiff's employment to be reinstated, Defendants insisted that he resume work under Angelo, despite the Union's instruction to the contrary.

76. Defendants constructively discharged Plaintiff because he engaged in protected activity and prevailed in his claim.

77. By their actions, Defendants and their agents retaliated against Plaintiff with respect to harassment, hostile environment, wages, promotion, termination and other terms and conditions of employment, because of his age and national origin, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq*.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the NYCHRL*

78. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

79. The NYCHRL prohibits retaliation by any person against any individual who in good faith complains about discriminatory practices to which he/she has been subjected.

80. Plaintiff filed a grievance through his Union wherein he complained about the unlawful age discrimination he was experiencing and his unlawful termination on December 1, 2015.

81. The matter was presented before an arbitration panel. After reviewing the evidence, and conducting a hearing, the arbitration panel held that there had been no just cause to terminate Plaintiff's employment and held that he should be reinstated.

82. Defendants thereafter assigned Plaintiff to the very same supervisor, Angelo, who had subjected him to a hostile work environment, effectively orchestrating Plaintiff's termination.

83. This constructive discharge was in retaliation for Plaintiff's complaint about the age and disability discrimination.

84. By their actions, Defendants and their agents retaliated against and discriminated against Plaintiff with respect to harassment, hostile environment, wages, promotion, termination and other terms and conditions of employment, because of his age and disability, in violation of the New York City Human Rights Law.

85. Plaintiff has thereby been damaged in an amount to be determined at trial, in wages, benefits, and pain and suffering.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Violation of FLSA For Non-Payment of Overtime Wages*

86. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

87. Plaintiff was routinely worked in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-a-half (1 ½) times his regular rate of pay.

88. These practices were willful and lasted for the duration of all relevant times.

13

89.     In violation of federal law, Defendants attempted to "credit" Plaintiff's overtime hours in a given week to another week where he was working less than forty hours, so that they would not have to compensate him at the statutory rate of one-and-a-half (1 ½) times his regular rate of pay.

90.     As a result of the foregoing, Plaintiff is entitled to recover all of his unpaid overtime wages, as well as an amount equal to their unpaid wages as liquidated damages, and the reasonable attorney's fees and costs of this action. 29 U.S.C. § 216(b).

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Violation of NYLL For Non-Payment of Overtime Wages*

91.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

92.     N.Y. Lab. Law § 160 and NYCCRR Tit. 12, § 142-2.2 require employers to compensate their employees at a rate not less than one-and one-half times their regular rate for any hours exceeding forty (40) in a workweek.

93.     As described above, Plaintiff routinely worked in excess of forty hours per week, yet the Defendants failed to compensate Plaintiff in accordance with the NYLL's and NYCCRR's overtime provisions.

94.     In violation of New York law, Defendants attempted to "credit" Plaintiff's overtime hours in a given week to another week where he was working less than forty hours, so that they would not have to compensate him at the statutory rate of one-and-a-half (1 ½) times his regular rate of pay.

95.     These practices were willful and lasted for the duration of all relevant times.

96. As a result of the foregoing, Plaintiff is entitled to recover all of his unpaid overtime wages, as well as an amount equal to their unpaid wages as liquidated damages, and the reasonable attorney's fees and costs of this action.

**EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*(Failure to Provide Accurate Wage Statements in Violation of
the New York Labor Law § 195 and the NYWTPA)*

97. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

98. New York Labor Law §195 (3) and the NYWTPA requires that employers furnish employees with wage statements containing specific enumerated criteria on each occasion when the employer pays wages to the employee.

99. The Defendants did not issue accurate pay stubs to the Plaintiff in violation of New York Labor Law §195 (3) and the NYWTPA.

100. Specifically, Plaintiff was not given pay stubs which accurately reflected his overtime hours.

101. This practice was and is willful and in violation of New York Labor Law § 195 (3) and the NYWTPA.

102. Additionally, Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

103. Here, upon information and belief, Defendants failed to comply with this provision by failing to provide Plaintiff with the required annual notice meeting the requirements of NYLL § 195(1)(a).

104. This practice was and is willful and in violation of New York Labor Law § 195 (1) and the NYWTPA.

105. By reason of the foregoing, the Defendants are liable in an amount in excess of $10,000.00 plus liquidated damages, costs and attorneys' fees.

WHEREFORE, Plaintiff prays this Court grant judgment to him, including the following relief:

1. An award of compensatory damages in an amount to be determined at trial;

2. An award for overtime wages, liquidated damages for same, and damages for the NYWTPA violations;

4. Plaintiff's reasonable attorneys' fees to the maximum extent permitted by law;

5. Plaintiff's costs, including, but not limited to, expert fees, court reporters' fees, and disbursements of this action;

6. An award of punitive damages in an amount to be determined at trial to the maximum extent permitted by law; and

7. Such other and further relief as this Court may deem just and proper, including pre- and post-judgment interest on all causes of action.

Dated: New York, New York
March 7, 2018

Respectfully submitted,

JOSEPH & NORINSBERG, LLC

By: _____
Chaya M. Gourarie, Esq.
Bennitta L. Joseph, Esq.
225 Broadway, Suite 2700
New York, New York 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
*Attorneys for Plaintiff*